IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRITTNEY HILL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:19-CV-2871-K |
| | § | |
| MONIQUE TURKNETT, TERENE | § | |
| CARRIGAN, GLADYS STRONG, and | § | |
| DALLAS COUNTY, TEXAS, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant Dallas County, Texas' ("the County") Motion to Dismiss the Plaintiff's Claims Alleged Against it in Plaintiff's Original Complaint (Doc. No. 13).  The Court has carefully considered the motion, the response, the reply, the relevant portions of the record, and the applicable law.  Because Plaintiff Brittney Hill ("Plaintiff") failed to sufficiently allege the County had an unconstitutional policy or custom to state a claim for municipal liability under § 1983, the Court **GRANTS** the County's motion to dismiss.  However, the Court also **GRANTS** Plaintiff leave to file an amended complaint as to her claim against the County.

ORDER – PAGE 1

I.      **Factual and Procedural Background**

On December 5, 2017, Plaintiff Brittney Hill was a pretrial detainee in custody at Lew Sterrett Justice Center ("the Jail") which is operated by the County. On this same date, inmates, including Plaintiff, were called from their cells to line up for recreation.  Plaintiff alleges participation in recreation is optional and inmates may choose to stay in the housing area.  Although she initially lined up, Plaintiff changed her mind and wanted to return to her cell, which she said to Defendant Monique Turknett ("Defendant Turknett"), a County Detention Service Officer.   Plaintiff alleges that Defendant Turknett became "incensed and upset" with Plaintiff, began to berate her, and ordered her to "[t]ake [her] bitch ass to rec."  Plaintiff alleges that she calmly responded to Defendant Turknett, "If you weren't in that uniform, you wouldn't be talking all that shit."  With this statement, Plaintiff alleges Defendant Turknett became infuriated, unzipped the top of her uniform, came face-to-face with Plaintiff, and yelled, "I'll show you what I'll do outside this uniform." Plaintiff alleges she did not do anything further, but Defendant Turknett became angrier with Plaintiff, threatened her, then grabbed her by the collar and punched her in the face.

Defendants Gladys Strong ("Defendant Strong"), a County Detention Service Officer, and Terene Carrigan ("Defendant Carrigan"), a County Detention Training Officer, were nearby and aware of what was happening between Plaintiff and

ORDER – PAGE 2

Defendant Turknett.  (The County notes in its motion that Plaintiff brought suit against Defendant Carrigan under wrong name as her first name is Kimberly, not Terene.)  Plaintiff alleges Defendants Strong and Carrigan restrained Plaintiff against the wall while Defendant Turknett continued to punch Plaintiff, then they joined in and began hitting Plaintiff.  At some point, Plaintiff alleges Defendants Strong and Carrigan threw Plaintiff to the ground where Defendant Turknett "continued to mercilessly pound Plaintiff's face in a fit of violent rage."  Plaintiff alleges she suffered two black eyes, bruises over her entire body, and an orbital fracture, and she was taken by ambulance to the hospital.  Plaintiff alleges that at no time during this incident did she strike or attempt to strike any of the individual Defendants or any other Jail staff.

On December 4, 2019, Plaintiff filed this lawsuit against Defendants Turknett, Strong, and Carrigan, in their individual capacities, and the County.  Plaintiff asserts claims under 42 U.S.C. § 1983 ("§ 1983") against Defendants Turknett, Strong, and Carrigan for the use of excessive force against Plaintiff and against Defendants Strong and Carrigan for bystander liability.  Plaintiff also asserts a claim against the County under § 1983 for an unconstitutional policy or custom that "was the moving force behind the deprivation of Plaintiff's rights."  The County filed the instant motion to dismiss Plaintiff's claim against the County pursuant to Federal Rule of Civil Procedure 12(b)(6).

ORDER – PAGE 3

## II.    Standard of Review

In considering a Rule 12(b)(6) motion, a court must determine whether the plaintiff has sufficiently stated a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). A well-pleaded complaint must allege facts upon which the claims are based and not be a conclusory recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must state sufficient facts such that the "claim has facial plausibility" and is not merely "possible." *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff pleads a claim with facial plausibility when the "factual content . . . allows the court to draw the reasonable inference that the defendant is liable." *Id.* This pleading standard does not require "'detailed factual allegations,' but it demands more than an unadorned [ ] accusation . . . . that is devoid of 'further factual'" support.  *Iqbal*, 556 U.S. at 662 (quoting *Twombly*, 550 U.S. at 555).  The complaint must allege sufficient facts to "give the defendant fair notice" of plaintiff's claims against the defendant.  *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  The alleged facts must be facially plausible such that the facts nudge the plaintiff's claims "across the line from conceivable to plausible." *Id*. at 570.

The Court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007)

(per curiam).  The Court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

The Court must generally determine a motion to dismiss for failure to state a claim based solely on the pleadings, including any attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The Fifth Circuit also allows the district court to consider documents attached to the motion to dismiss when those documents "are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Id.* at 498–99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

In the context of a claim for municipal liability, the plaintiff may satisfy the pleading standard and, therefore, survive a motion to dismiss by alleging facts about "(1) past incidents of misconduct by the defendant to others; (2) multiple harms that occurred to the plaintiff [herself]; (3) the involvement of multiple officials in the misconduct; or (4) the specific topic of the challenged policy or training inadequacy." *Flanagan v. City of Dallas*, 48 F. Supp. 3d 941, 947 (N.D. Tex. 2014)(Lynn, J.) (quoting *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 843-44) (S.D. Tex. 2011)). Those facts, along "with any additional elaboration possible, help to (1) 'satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also

ORDER – PAGE 5

"grounds" on which the claim rests,' . . . and (2) 'permit the court to infer more than the mere possibility of misconduct.'" *Id.* (quoting *Twombly*, 550 U.S. at 555 n.3; *Iqbal*, 556 U.S. at 679).

## III.   Analysis

In its motion, the County asserts that Plaintiff failed "to plead a plausible claim for relief against the County under 42 U.S.C. § 1983" because she failed to sufficiently plead: (1) a custom that has the "force of official policy" and which caused the deprivation of Plaintiff's constitutional rights; and (2) facts to permit a reasonable inference that the County's policymakers were deliberately indifferent.   Plaintiff responds that she sufficiently pleaded a viable § 1983 claim against the County as her factual allegations demonstrate a persistent and widespread custom or unwritten County policy as well as deliberate indifference by the County's policymaker. Plaintiff asserts that the County is attempting to require "that Plaintiff marshal [her] evidence at this stage" and this "is beyond the requirements of the law."

At the outset, the Court addresses two matters raised in Plaintiff's response. First, Plaintiff attempts to "incorporate" her Rule 7(a) Reply as further support for the sufficiency of her claim against the County.   The Court declines to consider her Rule 7(a) Reply, and any allegations contained therein, in analyzing the sufficiency of Plaintiff's allegations.   Plaintiff offers no explanation, let alone support, as to why the

Court may properly consider this Reply in the deciding the County's motion to dismiss. *See Collins*, 224 F.3d at 498 (the court must generally determine a motion to dismiss for failure to state a claim based solely on the pleadings).  The Rule 7(a) Reply was not attached to her Complaint nor was it attached to the County's motion to dismiss.  *See id.* at 498-99. The Court also declines Plaintiff's request to take judicial notice "of the cases filed in the Northern District Federal Courts . . . over the past fifteen years involving . . . excessive force."  Plaintiff asks the Court to take judicial notice of the "large number of excessive force claims made over the years" in the context of the sufficiency of her allegations as to the County's deliberate indifference.  Again, Plaintiff fails to establish why the Court can or should go outside the pleadings to consider these cases in deciding this motion to dismiss.   Accordingly, the Court makes its determination on the instant motion based solely on the pleadings before it.  *See id.*

### A.      Municipal Liability under Section 1983

A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a person of her constitutionally protected rights.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978); *see Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) ("[A] plaintiff must show the deprivation of a federally protected right caused by an action taken 'pursuant to an official policy.'").  The unconstitutional conduct the plaintiff complains of "must be directly attributable to the municipality

through some sort of official action or imprimatur[.]" *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) ("[T]here must be both municipal culpability and causation."). A municipality's liability cannot rest on the theory of *respondeat superior* as "isolated unconstitutional actions by municipal employees will almost never trigger liability." *Id.* "[U]nder § 1983, local governments are responsible only for their *own* illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (internal quotations omitted). Accordingly, "it is far more difficult for [a] plaintiff to establish municipal liability . . . than to establish individual liability." *Ayers v. City of Holly Springs*, Civ. Action No. 3:05-CV-75, 2006 WL 2943295, at *4 (N.D. Miss. Oct. 13, 2006).

To successfully establish municipal liability under § 1983, "[the] plaintiff must identify: '(1) an official policy (or custom), of which, (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom.'" *Valle*, 613 F.3d at 541-42 (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir, 2002)); *see Monell*, 436 U.S. at 694. The first element, an official policy or custom, is defined as:

> 1. A policy, statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
> 2. A persistent, widespread practice of city officials or employee, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.

ORDER – PAGE 8

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)(en banc); *see James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009). As for the second element, "[a]ctual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Webster*, 735 F.2d at 841; *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988) (the policymaker with the actual or constructive knowledge must have "the responsibility for making law or setting policy in any given area of a local government's business."). To satisfy the third prong, the "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

As much as the Court can glean from her Complaint, Plaintiff alleges that the County had three customs or policies that lead to the violation of her constitutional rights: (1) the use of excessive force by detention officers against pre-trial detainees; (2) "bystander" detention officers "aiding and joining other officers" in their use of excessive force rather than preventing the use of excessive force; and (3) the County's failure to properly train and/or implement training in conflict de-escalation and the use and prevention of excessive force. Plaintiff does not allege the County had a written or express policy as to any of these; rather, Plaintiff alleges each was a "widespread

ORDER – PAGE 9

practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James*, 577 F.3d at 617 (quoting *Piotrowski*, 237 F.3d at 579)).  For the following reasons, the Court finds Plaintiff failed to sufficiently allege the County had an unconstitutional policy or custom to state a claim against the County under § 1983.

> **1.     Use of Excessive Force by Detention Officers and Failure of "Bystander" Detention Officers to Intervene**

Plaintiff does not allege a written or express policy regarding the use and/or bystander responsibility to prevent the use of excessive force; therefore, she must establish an "official policy" through "a persistent, widespread practice" of municipal employees that "is so common and well settled as to constitute a custom that fairly represents a municipal policy."  *See Webster*, 735 F.2d at 841.  To establish a pattern of widespread and persistent custom through prior incidents, the incidents "'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [municipal] employees.'"  *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009) (quoting *Webster*, 735 F.2d at 842)).  "A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.'"  *Id.* at 851; *see Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010) (to establish a

pattern through prior incidents, the plaintiff must allege incidents that are "fairly similar to what ultimately transpired.").

The Court finds that Plaintiff failed to allege facts that permit the Court to infer the detention officers' use of excessive force, or the failure of bystander officers to prevent such use of excessive force, at the Jail was widespread or persistent.  In addition to her own incident, Plaintiff supports her allegations that the use of excessive force and/or failure to intervene was "so common and well-settled" with two specific incidents.  With respect to the first incident, which took place in 2013, Plaintiff alleges a homeless man died of severe pneumonia 18 hours after being booked into the Jail on a misdemeanor charge. This incident is patently dissimilar to Plaintiff's incident as it involved the denial of medical care and the training related to recognizing basic medical distress, not the use of excessive force or the failure to prevent the use of excessive force.  This 2013 incident cannot support an inference of a custom that fairly represents a County policy that is synonymous with either the use of excessive of force by detention officers or the failure of "bystander" detention officers to intervene in such situations.

The other incident, which occurred in 2015, involved the alleged use of excessive force by Sheriff's Deputies against a free citizen in a County building.  Plaintiff alleges "Joseph Hutcheson entered a Dallas County lobby acting erratically; four Dallas

ORDER – PAGE 11

County Sheriff deputies used excessive force in subduing and handcuffing Hutcheson, causing him to stop breathing, which ultimately caused his death."  This incident is also too factually dissimilar from Plaintiff's incident to permit the Court to infer a custom of detention officers at the Jail using excessive force against pretrial detainees or of "bystander" detention officers at the Jail failing to intervene when fellow detention officers use excessive force.  The 2015 incident involved the action of Sheriff's Deputies, not detention officers, against a free citizen in a County building, not a pretrial detainee in the Jail.  Plaintiff submits no other prior incidents in support of her allegation of a pattern of widespread and persistent custom.  Plaintiff must allege incidents which are "fairly similar to what ultimately transpired" to permit the Court to reasonably infer an official policy related to the use of excessive force by detention officers and the failure to intervene by "bystander" detention officers.  *See Sanders-Burns*, 594 F.3d at 381.  Plaintiff failed to meet this standard.  Based on Plaintiff's allegations, the Court cannot infer a persistent, widespread practice that is so common and well settled that it is a custom representing a County policy.

### 2. Failure to Train

Plaintiff also alleges the County had a policy or custom of failing to train its detention officers specifically in conflict de-escalation and the use of force.  Failure to train may be a "policy" for purposes of municipal liability under § 1983, but only when

it "reflects a 'deliberate' or 'conscious' choice by a municipality." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).  To assert a claim for failure to train, the plaintiff must allege that: (1) the municipality's training procedures were inadequate; (2) the municipality was deliberately indifferent in adopting its training policy; and (3) the inadequate training policy directly caused the violations in question. *See Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010).  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61.

The plaintiff must "allege facts to plausibly suggest the municipality's deliberate indifference to the need for proper training."  *Saenz v. City of El Paso*, 637 F. App'x 828, 831-32 (5th Cir. 2016)(per curiam).   Deliberate indifference is a very stringent standard, requiring the plaintiff demonstrate proof "that a municipal actor disregarded a known or obvious consequence of his action." *Brown v. Bryan Cty.*, 219 F.3d 450, 457 (5th Cir. 2000).  To satisfy this pleading standard, the plaintiff ordinarily must allege "that the municipality had notice of a pattern of similar violations which were fairly similar to what ultimately transpired."  *Saenz*, 637 F. App'x at 832; *see Valle*, 613 F.3d at 547 (normally the plaintiff must show a pattern of similar violations, and when it involves excessive force, the prior actions must have involved injury to a third-party); *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) (in alleging a policy of failure

to train, plaintiff must show "at least a pattern of similar incidents in which the citizens were injured" to establish municipal liability under § 1983) (internal quotations omitted).

Plaintiff fails to sufficiently allege a County policy based on failure to train. Plaintiff alleges the County failed to train its detention officers in the Jail on conflict de-escalation and the use and/or prevention of excessive force, and this resulted in the alleged violation of Plaintiff's constitutional rights.  In support of this claim, Plaintiff again submits the prior incidents in 2013 (medical care) and 2015 (excessive force involving free citizen in public building).  In addition, Plaintiff alleges the 2013 class for the Sheriff's Training Academy (the "Academy") had an exceedingly low passage rate for its exam, and former Sheriff Lupe Valdez admitted in an interview that the Academy was at risk of being shut down.  Plaintiff alleges the City of Dallas had success implementing conflict de-escalation training, and former Sheriff Valdez made a statement in a late 2017 interview that "[t]here are tough hurdles to overcome in training like de-escalating a tense situation . . . ."  Plaintiff alleges that "[f]or years, as depicted in numerous media accounts, the Dallas County Sheriff's Department has had a custom and culture of not properly training its officers, particularly in de-escalation and use-of force matters."

ORDER – PAGE 14

These allegations are insufficient to satisfy the pleading requirements for a failure to train claim.  To satisfy the first element that the municipality's training procedures were inadequate, Plaintiff is required to "allege with *specificity* how a particular training program is defective." *Zarnow*, 614 F.3d at 170 (emphasis added). Plaintiff wholly failed to allege with specificity how the County's training as to conflict de-escalation and/or the use of force are defective or deficient.  "Defects in a particular training program must be specifically alleged." *Quinn v. Guerrero*, 863 F.3d 353, 365 (5th Cir. 2017).  Plaintiff's allegations regarding the training are simply conclusory with no additional factual support and, in some instances, require the Court to make assumptions.  *See Speck v. Wigiton*, 606 F. App'x 733, 736 (5th Cir. 2015) ("[T]he allegations do not satisfy the first element because [plaintiff] alleges no facts about what training Granbury provided or failed to provide. Complaints typically satisfy the first element by alleging facts related to the locality's actual training program."). Plaintiff is correct in that she is not required to plead "'detailed factual allegations,'" but she is required to plead "more than an unadorned [ ] accusation . . . . that is devoid of 'further factual'" support.  *Iqbal*, 556 U.S. at 662 (quoting *Twombly*, 550 U.S. at 555).  The law in this Circuit clearly requires any defects in the County's training must be alleged specifically.  *See Quinn*, 863 F.3d at 353; *Zarnow*, 614 F.3d at 170; *Speck*, 606 F. App'x at 736.

ORDER – PAGE 15

Even if Plaintiff had specifically alleged the training deficiencies, Plaintiff failed to "allege facts to plausibly suggest the [County's] deliberate indifference to the need for proper training." *Saenz*, 637 F. App'x at 831-32.  In her response, Plaintiff argues she met the plausibility standard regarding deliberate indifference based on her allegations that: (1) former Sheriff Valdez said in an interview "[t]here are tough hurdles to overcome in training like de-escalating a tense situation"; and (2) the County chose not to follow the City of Dallas and other municipalities to implement conflict de-escalation training despite "enormous success rates" those municipalities had. Plaintiff is mistaken as these allegations do not satisfy the plausibility standard.  First, these allegations are completely conclusory with no supporting facts which would allow the Court to infer deliberate indifference.  Furthermore, to satisfy this "deliberate indifference" standard, Plaintiff must typically show a pattern of similar violations of which the County had notice to establish deliberate indifference by the County.  *See Saenz*, 637 F. App'x at 832; *Sanders-Burns*, 594 F.3d at 381.  In the previous section, the Court explained why the 2013 and 2015 incidents are both insufficient to show a pattern of similar violations.  For the same reasons, these two incidents are equally unavailing to show a pattern of similar violations to support Plaintiff's claim for failure to train as to conflict de-escalation and use of force.  Plaintiff fails to sufficiently allege the County had notice of a pattern of similar violations, as the only other allegations

regarding notice are mere conclusory allegations without further factual detail—
"County was on notice of a pattern of internal violations that were similar to what
ultimately transpired when Plaintiff's constitutional rights were violated." *See Saenz*,
637 F. App'x at 832 (to satisfy this pleading standard, the plaintiff must allege "that
the municipality had notice of a pattern of similar violations which were fairly similar
to what ultimately transpired."). Plaintiff failed to sufficiently plead the County was
deliberately indifferent to an obvious need for more or different training on use of force
because Plaintiff did not allege a pattern of similar violations of which the County had
notice.

Plaintiff also failed to establish deliberate indifference under the very narrow
"single incident exception". In her Complaint, Plaintiff alleges that the "single
incident" involving the violation of her own rights sufficiently alleges municipal liability
under § 1983 "for the failure to train its [detention] officers against the use of excessive
force and failure to train them that, as bystander officers, they have a duty and an
obligation to prevent the use of excessive force by a fellow detention officer[.]" In her
response, Plaintiff asserts that the "single incident exception" shows deliberate
indifference of the County's policymaker. When asserting the narrow "single incident
exception" to establish deliberate indifference, the plaintiff must show "the highly
predictable consequence of failure to train would result in the specific injury suffered,

ORDER – PAGE 17

and that the failure to train represented the moving force behind the constitutional violation." *Sanders-Burns*, 594 F.3d at 381.

Plaintiff fails to make the required showing.  Plaintiff alleges,

> Further, the single incident involving Plaintiff was a highly predictable consequence of a particular failure to train.  County's failure to train its officers against the use of excessive force and failure to train them that, as bystander officers, they have a duty and an obligation to prevent the use of excessive force by a fellow detention officer who is violating an inmate's constitutional rights and where they have a reasonable opportunity to prevent the harm, creates a risk so predictable that it amounts to conscious disregard for Plaintiff's constitutional rights and the rights of others.

This allegation is merely a recitation of the single incident exception and Plaintiff provides no further factual allegations in support of this very narrow exception. Plaintiff did not satisfy the required showing.  *See id.*

Aside from simply alleging a legal conclusion, Plaintiff fails to acknowledge that the single-incident exception "is generally reserved for those cases in which the government actor was provided no training whatsoever."  *Pena v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018); *Edwards v. Oliver*, Civ. Action No. 3:17-CV-1208-M-BT, 2019 WL 4603794, at * 10 (N.D. Tex. Aug. 12, 2019), *report and recommendation adopted*, 2019 WL 4597573 (N.D. Tex. Sept. 23, 2019) (Lynn, CJ).  To be sure, "there is a difference between a *complete failure to train*[ ] . . . and a failure to train in one limited area."  *Id.*   Plaintiff does not allege that the County failed to train

ORDER – PAGE 18

the individual Defendants at all; rather, Plaintiff alleges that the County failed to train them, and other detention officers, on the use of excessive force and bystander responsibility to intervene if a fellow detention officer uses excessive force.  Plaintiff's conclusory allegation regarding single-incident exception does not reach the very limited application of this narrow exception.  *See Pena*, 879 F.3d at 624.

Plaintiff's allegations are insufficient to satisfy the pleading requirements for a failure to train claim.  These allegations as to the County's training being deficient or non-existent are insufficient without supporting facts to permit the Court to rationally infer that the County's final policymaker was aware of any systematic deficiencies in officer training.  *See Iqbal*, 556 U.S. at 662.

### 3.    Conclusion

In conclusion, the allegations contained in Plaintiff's Complaint are insufficient to permit the Court to infer that there is a persistent and widespread practice that is "so common and well-settled as to constitute a custom that fairly represents municipal policy." *James*, 577 F.3d at 617.  Even so, Plaintiff also fails to sufficiently plead facts to allow the Court to infer that the County, through its policymakers, acted with deliberate indifference to a custom of the use of excessive force and bystander failure to intervene.  Therefore, the Court finds Plaintiff failed to sufficiently state a claim against the County for municipal liability under § 1983.

ORDER – PAGE 19

**B.      Leave to Amend**

In her response to the County's motion, Plaintiff seeks leave, in the alternative, to amend her Complaint should the Court find any deficiencies.  In its reply, the County re-asserts its argument that Plaintiff fails to sufficiently plead her claim, but agrees that Plaintiff should be afforded the opportunity to amend her Complaint since she has not yet done so.

The Court is "entrusted with the discretion to grant or deny a motion to amend and may consider a variety of factors including 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., and futility of amendment.'" *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005)).  This would be Plaintiff's first time to amend in an attempt to cure the deficiencies identified by the Court in her Original Complaint.  The County also agrees that Plaintiff should be allowed to amend her Complaint, negating any undue prejudice to the County.  Further, there is no evidence of undue delay as this case has been pending only seven months, or of bad faith or dilatory motive.  Finally, the Court does not believe an amended complaint would be futile.  The Court **grants** Plaintiff leave to file an amended Complaint **within 30 days from the date of this Memorandum**

**Opinion and Order**.  If Plaintiff fails to amend her Complaint as to the County, Plaintiff's claim against the County will be dismissed without prejudice and without further notice.

**IV.     Conclusion**

For the foregoing reasons, the Court **GRANTS** the County's motion to dismiss. However, the Court also **GRANTS** Plaintiff leave to amend her Complaint.  Should Plaintiff fail to file her amended complaint within 30 days from the date of this Memorandum Opinion and Order, Plaintiff's claim against the County will be dismissed without prejudice and without further notice.

**SO ORDERED.**

Signed July 9th, 2020.

_Ed Kinkeade_
ED KINKEADE
UNITED STATES DISTRICT JUDGE

ORDER – PAGE 21